1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARIO V. VENTURA,                )
                                 )        No. C 05-01814 JF (PR)
            Plaintiff,           )
                                 )        **ORDER GRANTING MOTION**
    vs.                          )        **FOR SUMMARY JUDGMENT**
                                 )
KEVIN POUGH, et al.,             )
                                 )
            Defendants.          )
                                 )        (Docket No. 42)
_____  )

        Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint on

May 2, 2005, pursuant to 42 U.S.C. § 1983 against Menlo Park Police Officers

Kevin Pough and Joseph Hinkston, the Menlo Park Police Chief, and the City of

Menlo Park.  On May 1, 2008, this Court found that Plaintiff's original complaint

stated a cognizable claim of excessive force in violation of the Fourth Amendment

and issued an order of service on the named Defendants.[1]  Defendants filed a motion

for summary judgment on July 23, 2008, on the grounds that: (1) Plaintiff has not

_____

        [1] Plaintiff attempted to file an amended complaint , which the Court denied.
The Court ordered service of the original complaint after Plaintiff failed to file a
second amended complaint.

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.JF\CR.05\Ventura814_msj.wpd

1  established that Defendants used excessive force in violation of the Fourth

2  Amendment; and (2) Defendants are entitled to qualified immunity.  Plaintiff did not

3  file an opposition.  After reviewing the motion, the Court concludes that Defendants

4  are entitled to summary judgment and will GRANT Defendants' motion as to all

5  claims.

6

7  **DISCUSSION**

8  **I.      Standard of Review**

9          Summary judgment is proper where the pleadings, discovery and affidavits

10  show that there is "no genuine issue as to any material fact and [that] the moving

11  party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material

12  facts are those that may affect the outcome of the case.  See Anderson v. Liberty

13  Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

14  the evidence is such that a reasonable jury could return a verdict for the nonmoving

15  party.  See id.

16          The court will grant summary judgment "against a party who fails to make a

17  showing sufficient to establish the existence of an element essential to that party's

18  case, and on which that party will bear the burden of proof at trial... since a complete

19  failure of proof concerning an essential element of the nonmoving party's case

20  necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S.

21  317, 322-23 (1986); see also Liberty Lobby, 477 U.S. at 248 (holding a fact is

22  material if it might affect the outcome of the suit under governing law, and that a

23  dispute about a material fact is genuine "if the evidence is such that a reasonable

24  jury could return a verdict for the nonmoving party").  The moving party bears the

25  initial burden of identifying those portions of the record which demonstrate the

26  absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.

27  Where the moving party will have the burden of proof on an issue at trial, it must

28  affirmatively demonstrate that no reasonable trier of fact could find other than for

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    the moving party.  But on an issue for which the opposing party will have the burden

2    of proof at trial, the moving party need only point out "that there is an absence of

3    evidence to support the nonmoving party's case."  Id. at 325.  If the evidence in

4    opposition to the motion is merely colorable, or is not significantly probative,

5    summary judgment may be granted.  See Liberty Lobby, 477 U.S. at 249-50.

6         The burden then shifts to the nonmoving party to "go beyond the pleadings

7    and by her own affidavits, or by the 'depositions, answers to interrogatories, and

8    admissions on file,' designate 'specific facts showing that there is a genuine issue

9    for trial.'"  Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving

10   party fails to make this showing, "the moving party is entitled to judgment as a

11   matter of law."  Id. at 323.

12        In considering a motion for summary judgment, the court must view the

13   evidence in the light most favorable to the nonmoving party; if, as to any given fact,

14   evidence produced by the moving party conflicts with evidence produced by the

15   nonmoving party, the court must assume the truth of the evidence set forth by the

16   nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,

17   1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to

18   make credibility determinations or weigh conflicting evidence with respect to a

19   disputed material fact.  See T.W. Elec. Serv. V. Pacific Elec. Contractors Ass'n, 809

20   F.2d 626, 630 (9th Cir. 1987).

21   **II.    Legal Claims and Analysis**

22        A.    Individual Liability

23        Defendants Hinkston and Paugh assert that they are entitled to qualified

24   immunity from Plaintiff's claim that they used excessive force in violation of the

25   Fourth Amendment.  Under Saucier v. Katz, 533 U.S. 194 (2001), the court must

26   undertake a two-step analysis when a defendant asserts qualified immunity in a

27   motion for summary judgment.  The court first faces "this threshold question: Taken

28   in the light most favorable to the party asserting the injury, do the facts alleged show

**United States District Court**
For the Northern District of California

1   the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court

2   determines that the conduct did not violate a constitutional right, the inquiry is over

3   and the officer is entitled to qualified immunity.

4        If the court determines that the conduct did violate a constitutional right, it

5   then moves to the second step and asks "whether the right was clearly established"

6   such that "it would be clear to a reasonable officer that his conduct was unlawful in

7   the situation he confronted." Id. at 201-02. Even if the violated right was clearly

8   established, qualified immunity shields an officer from suit when he makes a

9   decision that, even if constitutionally deficient, reasonably misapprehends the law

10  governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198

11  (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law

12  requires is reasonable... the officer is entitled to the immunity defense." Id. at 205.

13       Under the Fourth Amendment, officers may only use such force as is

14  "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S. 386,

15  397 (1989). To determine whether the force used was reasonable, courts balance the

16  nature and quality of the intrusion on the individual's Fourth Amendment interests

17  against the countervailing governmental interests at stake. Id. at 396. The

18  "reasonableness" of a particular use of force must be judged from the perspective of

19  a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id.

20  Because the reasonableness test is not capable of precise definition or mechanical

21  application, its practical application requires careful attention to the facts and

22  circumstances of each particular case, including "the severity of the crime at issue,

23  whether the suspect poses an immediate threat to the safety of the officers or others,

24  and whether he is actively resisting arrest or attempting to evade arrest by flight."

25  Id.

26       In addition, the court's consideration of "reasonableness must embody

27  allowance for the fact that police officers are often forced to make split-second

28  judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

United States District Court

For the Northern District of California

1    the amount of force that is necessary in a particular situation." Id. at 396-97.  Nor

2    every push or shove, even if it may later seem unnecessary in the peace of a judge's

3    chambers, violates the Fourth Amendment.  Id. at 396.

4            Defendants submitted the declaration of Officer Paugh and documentary

5    evidence showing the following facts: On the date of the incident, February 20,

6    2005, Plaintiff was identified as driving a stolen vehicle.  Officer Hinkston was the

7    first to spot the stolen vehicle, and Officer Paugh came to his assistance in the

8    pursuit.  Plaintiff did not stop when both officers activated their emergency lights

9    and sirens.  Instead, he "accelerated, failing to stop at several stops signs and driving

10   at approximately 55 miles per hour on residential streets."  (K. Paugh Decl. at 2.)

11   Plaintiff eventually slowed and stopped the car, but instead of fleeing immediately

12   on foot as expected, he stayed in the vehicle for several seconds, "reaching around

13   inside."  (Id.)  Officer Paugh feared that Plaintiff "might be reaching for a weapon."

14   (Id.)  The officers exited their patrol cars as Plaintiff began to flee on foot.  As

15   Plaintiff ran past Officer Paugh, he noticed that Plaintiff was carrying a "large black

16   object in his left hand."  (Id.)  Plaintiff was running much faster than either Officer

17   Paugh or Hinkston could run.  Officers ordered Plaintiff to stop running, but he did

18   not.  Officer deployed his K-9 partner, Zin, with the order "to apprehend" the fleeing

19   Plaintiff.  (Id.)  Zin caught up with Plaintiff and "engaged him by biting him on the

20   upper portion of his left leg, immediately knocking [Plaintiff] to the ground."  (Id.)

21   Plaintiff struggled and attempted to get up, at which point Zin "lost his grip" and

22   "had to re-engage [Plaintiff] by biting his upper right leg."  (Id.)  Meanwhile, the

23   officers caught up with Plaintiff as he continued to struggle with Zin.  "Fearing that

24   [Plaintiff] had a weapon," Officer Hinkston drew his firearm and pointed it at

25   Plaintiff, instructing him "to turnover and put his hands behind his back."  (Id. at 3.)

26   Plaintiff refused.  Officer Paugh "assisted" Plaintiff in turning over and placed

27   handcuffs on him.  (Id.)  Once Officer Paugh had the handcuffs on Plaintiff, he

28   instructed Zin to release his hold, which he did.  Paramedics arrived at the scene in

United States District Court

For the Northern District of California

1   response to Officer's Paugh's call to treat Plaintiff's several dog bite wounds.

2   Plaintiff was taken to Stanford Hospital for further treatment.

3       Under the circumstances described by Defendants, the force used by officers

4   to apprehend and secure Plaintiff was objectively reasonable.  See Mendoza v.

5   Block, 27 F.3d 1357, 1362-63 (9th Cir. 1994).[2]  In Mendoza, the plaintiff was

6   severely bitten by a police dog while trying to evade arrest for bank robbery.  He

7   sued the arresting officers alleging that they used excessive force to arrest him.  The

8   Ninth Circuit disagreed:

9       Mendoza was fleeing arrest for a bank robbery, a felony.  The
        deputies believed he was armed, due to radio broadcasts from
10      headquarters.  Mendoza did not surrender when warned that he
        would be bitten if he did not come out of the bushes.  He was hiding
11      on private property and the deputies could reasonably believe he
        posed a danger not only to themselves but also to the property
12      owners.  He had not been subdued when the dog bit him the second
        time.  In fact, once he was out of the bushes, he struggled with the
13      dog, causing the dog to shift its bite.  Using a police dog to find
        Mendoza, and to secure him until he stopped struggling and was
14      handcuffed, was objectively reasonable under these circumstances.

15  Id.  The same conclusion applies here: the officers believed that Plaintiff was in

16  possession of a stolen vehicle, that Plaintiff posed a threat to the public in leading

17  the police in a high speed care chase through residential streets, and that Plaintiff

18  was actively avoiding arrest.  When Plaintiff finally did stop the vehicle, he did not

19  surrender but continued to flee on foot despite the warnings given by the officers.

20  Officers reasonably believed that Plaintiff may be armed because they saw him

21  reaching around the car before fleeing and he had a black object in his hand as he

22  ran past.  Even after the K-9 knocked him down and bit him the first time, Plaintiff

23  continued to struggle, causing the K-9 to lose his grip and bite again.  When Officer

24  Hinkston, reasonably fearing Plaintiff was armed, instructed Plaintiff to turnover and

25

26      [2] While the test of reasonableness is often a question for the jury, this issue may be
    decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the
27  officer's force was "objectively reasonable" under the circumstances.  Jackson v. City of
    Bremerton, 268 F.3d 646, 651 n.1 (9th Cir. 2001); Scott v. Henrich, 39 F.3d 912,
28  915 (9th Cir. 1994).

1   put his hands behind his back, Plaintiff refused.  Officer Paugh had to force Plaintiff

2   to turnover and handcuff him before he could order the K-9 to release his hold.  The

3   officers' use of the police dog to apprehend Plaintiff and place him under control

4   was objectively reasonable under these circumstances.  <u>Accord</u> <u>id.</u>[3]

5        As noted, Plaintiff has not filed an opposition to the motion for summary

6   judgment.[4]  Where the plaintiff does not file an opposition to a motion for summary

7   judgment, but, as here, has verified his complaint, the Court treats the allegations in

8   the verified complaint as an opposing affidavit to the extent such allegations are

9   based on plaintiff's personal knowledge and set forth specific facts admissible in

10  evidence.  <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir.

11  1995).  The allegations in Plaintiff's complaint suggests that Defendants used force

12  after he was handcuffed; however, the allegations are largely conclusory and

13  insufficient to create a genuine issue for trial because they do not show that, contrary

14  to Defendants' evidence, Defendants used force after Plaintiff had stopped resisting

15  arrest.  <u>See also</u> <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (9th. Cir.

16  2001) ("party cannot rest on the allegations contained in his complaint in opposition

17  to a properly supported summary judgment motion made against him").  Plaintiff's

18

19      [3] <u>Mendoza</u> and this case are distinguishable from <u>Smith v City of Hemet</u>, 394
20  F.3d 689 (9th Cir. 2005), where the Ninth Circuit found that a jury could  conclude
    that the use of force comprised of a police dog, pepper spray and physical force was
21  excessive.  In <u>Smith</u>, unlike <u>Mendoza</u> and this case, there was no basis to warrant the
    conclusion that the plaintiff was a particularly dangerous criminal, the plaintiff
22  resisted arrest only for a very brief period and, importantly, plaintiff set forth facts
    showing that significant force (including sliding plaintiff off the porch face down
23  and pepper spraying him repeatedly) was used after he had clearly stopped resisting
    arrest.
24
25      [4]  Plaintiff was advised pursuant to <u>Rand v Rowland</u>, 154 F.3d 952 (9th Cir.
    1998) (en banc), that to prevent summary judgment in favor of defendants he "must
26  set out specific facts in declarations, depositions, answers to interrogatories, or
    authenticated documents, as provided in Rule 56(e), that contradicts the facts shown
27  in the defendant's declarations and documents and show that there is a genuine issue
    of material fact for trial."  May 1, 2008 Order at 4.  (quoting <u>Rand</u>, 154 F.3d at 962-
    63).  "If you do not submit your own evidence in opposition, summary judgment, if
28  appropriate, may be entered against you."  <u>Id.</u>

United States District Court

For the Northern District of California

1    conclusory statements that "at no time did [he] try to resist," (Pl.'s Decl. at 2), and

2    that "during the time [he] suffered most wounds, [he] was lying on [his] back

3    surrend[er]ed and cuffed," (<u>Id.</u> at 4), are not enough to defeat summary judgment.

4    <u>See e.g.</u>, <u>Arpin v. Santa Clara Valley Transportation Agency</u>, 261 F.3d 912, 922 (9th

5    Cir. 2001) (plaintiff's conclusory statement that she "did not resist arrest in any

6    way" insufficient to defeat summary judgment).

7         Defendants are entitled to summary judgment based on Plaintiff's failure to

8    meet his burden of proof under <u>Celotex</u> and show that there is a genuine issue for

9    trial on his claim of excessive force during arrest.  <u>See</u> <u>Arpin</u>, 261 F.3d at 922.  The

10   officer defendants are also entitled to qualified immunity because, even if the use of

11   force amounted to a constitutional violation, a reasonable officer could properly

12   believe that the use of force under these circumstances in this case would not violate

13   a clearly established constitutional right.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201-02; <u>Jackson</u>,

14   268 F.3d at 653 n.5.

15        B.    <u>Municipal Liability</u>

16        Plaintiff alleges that the City of Menlo Park ("the City") and the chief of

17   police[5] of the Menlo Park Police Department ("the Department") have violated his

18   constitutional rights by maintaining a "policy, regulation, custom or regulation" that

19   was the "moving force" behind his unconstitutional injuries.  (Pl.'s Decl. at 4.)

20        To impose municipal liability under § 1983 for a violation of constitutional

21   rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of

22   which he or she was deprived; (2) that the municipality had a policy; (3) that this

23   policy amounts to deliberate indifference to the plaintiff's constitutional rights; and

24   (4) that the policy is the moving force behind the constitutional violation.  <u>See</u>

25

26   ────────────

27        [5] The chief of police is named as a defendant in this action, but there is no
     individual liability under a <u>Monell</u> claim.  Furthermore, under no circumstances is there
     respondeat superior liability under section 1983.  <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040,

28   1045 (9th Cir. 1989).

United States District Court
For the Northern District of California

1  *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

2  However, a city or county cannot be liable for damages based on the actions of one

3  of its employees unless the employee inflicted constitutional harm.  See *City of Los*

4  *Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Quintanilla v. City of Downey*, 84 F.3d

5  353, 355 (9th Cir. 1996); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).  This

6  does not mean that the liability of municipalities or counties turns on the liability of

7  individual employees; rather, "it is contingent on a violation of constitutional

8  rights."  *Scott*, 39 F.3d at 916.  Therefore, where the conduct of individual

9  employees is found reasonable and proper, the municipality or county cannot

10  generally be held liable, because no constitutional violation occurred.  See *Gregory*

11  *v. County of Maui*,  523 F.3d 1101, 1109 (9th Cir. 2008) (where officers did not use

12  excessive force in violation of 4th Amendment, claims against the county also fail).

13  Here, Plaintiff has failed to show that there is a genuine issue of material fact with

14  respect to the liability of defendant officers for their alleged use of excessive force.

15  Therefore, the City and Department cannot be held liable for damages where no

16  constitutional violation has occurred.  Id.  Accordingly, the City and the Department

17  are entitled to summary judgment on Plaintiff's claims.

19                                **CONCLUSION**

20          For the foregoing reasons, Defendants' motion for summary judgment is

21  GRANTED.  The Clerk of Court shall terminate Docket No. 42, enter judgment and

22  close the file.

23          **IT IS SO ORDERED.**

24  DATED: _____9/3/08_____

25                                JEREMY FOGEL
                                  United States District Judge

United States District Court
For the Northern District of California